UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMZAD MOHAMMED,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 18-cv-00289-TSH<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 23, 25 |

## I. INTRODUCTION

In this Social Security case, Plaintiff Amzad Mohammed seeks waiver of a $13,975.20 repayment of supplemental security income benefits. Defendant Commissioner of the Social Security Administration found Plaintiff at fault for the overpayment and able to repay it, and therefore denied waiver of the overpayment. Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 23, 25. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion, **GRANTS** the Commissioner's cross-motion, and **AFFIRMS** the ALJ's decision that Plaintiff is not entitled to a waiver of overpayment recovery.

## II. BACKGROUND

### A. Plaintiff's Application for Disability Benefits

Plaintiff Amzad Mohammed was born in 1953. AR 22. He completed high school and received an engineering diploma in Bangladesh. AR 214. After moving to the United States, he worked from 2004 until 2008, but stopped working due to hearing problems. AR 214, 221.

Plaintiff began receiving supplemental security income ("SSI") benefits in December

2011. AR 16. On May 7, 2013, he met with the Social Security Administration ("SSA") and disclosed the existence of property he owned in Bangladesh. AR 150. On May 14, 2013, the SSA issued a notice informing him that he was overpaid benefits in the amount of $13,975.20 from December 1, 2011 to May 1, 2013, and that his SSI payments would be changed to $0 as of December 2011. AR 38-49. The notice provided his payments would stop due to the SSA's finding that he and his spouse had resources of more than $3,000 from December 2011 on. AR 38-39.

In a letter dated May 23, 2013, Plaintiff stated he "knew that the property of my country will not be counted as a resources [sic] of USA" and since "no worker of SSA office asked me about the property of my native country, then why should I willingly say from myself?" AR 54. Plaintiff also stated he "verbally gave away" the property to his children in 2004 and was now "going to execute my verbal declaration practically by making a deed." *Id.* On May 28, 2013, the SSA requested more information, including the appraisal value of the land in Bangladesh. AR 150-51. Plaintiff also filed a Request for Reconsideration on May 29, 2013, stating "I DO NOT HAVE RESOURCE OVER THE SSI RESOURCE LIMIT." AR 50. In a Notice of Reconsideration dated May 30, 2013, the SSA reaffirmed its previous decision. AR 55-57. On June 5, 2013, the SSA issued a Notice of Overpayment in the amount of $13,975.20. AR 58-66.

The record contains an Application Summary for Supplemental Security Income, dated June 12, 2013.[1] AR 22-37. According to the summary, Plaintiff reported he owned a home on 3.3 acres of land in Bangladesh and rented it to his son for $10,000 Bangladeshi takas (approximately $126 USD per month).[2] AR 27-28. Plaintiff reported the land was worth $0.00, had a tax value of $0.00, and that the home was worth $0.00. AR 27. He estimated the value of the home to be $22,000 Bangladeshi takas, approximately $277 USD.[3] AR 70. In a subsequent letter dated June 14, 2013, Plaintiff wrote:

---

[1] The summary does not contain a date for the application: "On _____, you applied for [SSI]…" AR 22.
[2] This USD value is based on the conversion rate used by Plaintiff in the June 12, 2013 application. AR 28.
[3] Same.

2

United States District Court
Northern District of California

> I do not consider the past payment is an overpayment because it was not my fault, in my past appointments no worker asked me about my property of my native country, then why should I say from my own self without asking any question, nobody will say from his own self.
>
> Moreover I am not getting any money from that property due to its insufficient income (about 100 dollars each month) and that is spent by my son for his salary as a property manager.

AR 140.

On July 2, 2013, Plaintiff submitted a Request for Waiver of Overpayment.[4] AR 67-74. On the request, Plaintiff checked the box, "The overpayment was not my fault and I cannot afford to pay the money back and/or it is unfair for some other reasons." AR 67. Question 5 on the request asks, "Why did you think you were due the overpaid money and why do you think you were not at fault in causing the overpayment or accepting the money?" AR 68. In response, Plaintiff wrote that "several appointment[s] were made with me before getting SSI, but I was not asked any question about my property of my native country so I did not say from my own self and I did not consider the resources of my country will be resources of America." *Id.* Question 6 asks, "Did you tell us about the change or event that made you overpaid?" *Id.* Plaintiff responded, "From the beginning I could not understand about the resources of Bangladesh and I did not consider that property will change my payment." *Id.* Question 15 B. asks the respondent to describe "any real estate (buildings or land) OTHER than where you live, or own or have an interest in, any business, property, or valuables" that "you or a member of your household own." AR 70. Plaintiff responded that he owned a "house (BD)" with a market value of $22,500/=" and "Land (BD)" with a market value of "?". *Id.* Question 22 D asks, "Is there any reason you CANNOT SELL or otherwise convert to cash any of the assets shown in items 15A and B?" AR 73. Plaintiff checked the box "Yes" and wrote:

> because I transferred the property to my children before verbally (at the time of serious disease of someone it is legal in our country to transfer or distribute the property among children) so now my children are not agree to sell the property. Now I am going to transfer the property practically by making deed very soon. I also informed you by a letter on 5/25/13 about the transferring property.

---

[4] The SSA uses the Request for Waiver of Overpayment to decide if it can waive collection of the overpayment or change the amount a claimant must pay back each month. AR 67.

3

*Id.*

On July 3, 2013, Matthew Rietfors, an intern at the Homeless Advocacy Project, prepared a "Statement of Claimant or Other Person" on Plaintiff's behalf. AR 85-86. Mr. Rietfors stated Plaintiff had difficulty with spoken English. AR 85. He also stated Plaintiff uses a hearing aid and "requires people speaking to him to talk very slowly and to sit right next to him; he also more often than not requires conversation to be written down so he can read sentences multiple times in order to comprehend what is being asked of him." *Id.* Mr. Rietfors wrote that Plaintiff "told me and others here at HAP that he was never asked about holding foreign property during his initial application, which is unlikely considering such a question exists on the form 8000, but if such a question was given orally, he may not have properly understood without a written prompt." *Id.*

In a letter dated July 31, 2013, the SSA informed Plaintiff it could not approve his request for waiver, but he had the right to meet with someone at the administration for a "personal conference" before it decided if he had to pay back the overpayment. AR 76-77. Plaintiff attended a personal conference on August 16, 2013. AR 84. The report from that conference indicates:

> 8/16/13 Claimant came to his waiver personal conference today. Claimant said he will buy an airplane ticket to Bangladesh and will stay there for 6 months. He will get a document from the Bangladesh government regarding his property there and bring back to the SSA office before May 2014. CR advised claimant he must be back in the United States for 30 days before he can come into the SSA office for possible reinstatement. CR makes unfavorable decision and denies the waiver because claimant admits he has property in Bangladesh and knows he is over the $3,000 resource limit. Claimant is at fault and is able to repay the money.

*Id.*

In a letter dated May 8, 2014, with the subject line "Request for repay my SSI money from June/2013," Plaintiff wrote:

> In view of the above subject I like to draw your kind attention that I have given away my properties among my children verbally in 2004 which is effective in our country and stated this to the SSA office during my interviews and also by giving a letter on 05/23/2013.
>
> The SSA officers said me you bring the proof, so that we can restart your payments.

4

> So now I made the deeds by registering in Bangladesh Govt. Register office and submitted it to your office in 04/01/2014.
>
> It is impossible to bring any money from my country for me, how SHOULD I MEET MY EXPENDITURES HERE?

AR 123, 128.

On May 9, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 79. In his request, Plaintiff stated, "I have no properties. I have given away all properties to my children before." *Id.* Plaintiff checked the box "Yes" stating he had additional evidence to submit and wrote that this evidence was "A proof that I have transferred my properties." *Id.* Plaintiff also completed a "Statement of Claimant or Other Person," in which he wrote:

> I left to Bangladesh in the middle of November so I can obtain proof regarding my property, as instructed by SSI case worker. She said I have until 5/14 to do so. I could not file my hearing on time because I was in Bangladesh trying to get proof for my reconsideration. I returned back in the US in 3/29/14 and found out my reconsideration was denied.

AR 80-81.

On July 3, 2014, Plaintiff reported he conveyed the Bangladeshi property by written deed on April 1, 2014. AR 122. Plaintiff also stated he had previously conveyed the property orally in 2004. *Id.* The record includes English translations of Bengali documents pertaining to the property in Bangladesh and the Plaintiff's deed by gift of that property to his children in the year 2014. AR 160-82. One of the deeds states:

> At the present you are the deed receiver are my sons and daughter, you deed receiver are doing very respect, love and taking care me as your father on every where and every situation, reason of your very care and love and every kind of help I has pleased to you and given the assets as gift to you by previous verbal donation and today I have completed my verbal decision by registered deed at present of witness and has agreed to handover the assets to your hand at present of the witness and you will use the assets as per your wishes and I has handover the documents of the assets, I processed one registered gift deed as per Islamic Shariah law so you are not suffer any causality in the future for above assets, from on you can enjoy the assets as per your wishes after correction the my/previous owner name from the government record, you can make mutation by your name and have right to giving gift, sale, Moorgate etc. and I the deed giver not right to make any objection and it will be disqualified if I do same as above

5

on every were.

AR 167.

Plaintiff's hearing was originally scheduled for October 26, 2015. AR 93. However, Plaintiff's attorney requested a postponement because Plaintiff had returned to Bangladesh. AR 110-11. His attorney explained that Plaintiff "stayed there because he could not afford to continue to live here in the United States without his SSI payments." AR 110. His attorney stated the earliest Plaintiff would return was January 2016 and therefore requested a continuance until mid-February 2016 or later. AR 111. The SSA rescheduled the hearing for March 17, 2016. AR 114.

In a pre-hearing letter dated March 7, 2016, Plaintiff's counsel wrote that Plaintiff conveyed the properties in February and March 2014, and their combined market value was approximately $24,981,938.00 Bangladeshi takas, or $322,267.80 USD.[5] AR 183-88. He stated Plaintiff made two trips to Bangladesh since his SSI stopped. AR 184. During the first trip, from November 8, 2013 through March 29, 2014, Plaintiff went "to address the property issues and bring back documentation." *Id.* On the second trip, Plaintiff and his wife left the United States on September 9, 2014, to live with their son in Bangladesh, staying there until Plaintiff returned to the United States in March 2016. *Id.*

**B.     The ALJ Hearing**

A hearing took place on March 17, 2016, before ALJ Nancy Lisewski. AR 209-29. Plaintiff appeared in person and testified with the aid of an interpreter. AR 211. He was represented at the hearing by his attorney, Donald Medearis. *Id.* The ALJ also heard testimony from Plaintiff's son-in-law, Mabubu Alam.[6] AR 211, 221.

When asked if he spoke any English, Plaintiff answered that he could, but he had a hearing problem. AR 213. Plaintiff testified he completed high school and received an engineering diploma. AR 214. He worked in the United States starting in 2004 for four years but was suspended due to his hearing problem. AR 214, 221. Plaintiff testified he started receiving SSI in

---

[5] The letter contains a typo and describes the taka amount as $2,49,000 takas. Based on the rate used by counsel in his letter, the taka amount would be $24,981,938.00.
[6] Mr. Alam's testimony is not material to the issues in this case and is therefore not summarized here.

6

October or November 2010. AR 213. He stated that he had no income and, when asked how he supported himself, Plaintiff answered that he lives with his daughter and son-in-law, and when he goes to Bangladesh, he lives with his son. AR 214, 219.

The ALJ asked Plaintiff if he owned land in Bangladesh, to which he responded that he "doesn't have any now." AR 214. Plaintiff explained that he verbally donated his land to his children when he had been admitted into the hospital in 2004, and that he made a deed to his children in 2014. *Id.* Plaintiff did not receive any money from his children for the property. *Id.* Plaintiff explained he got the land as a gift from his forefathers and gave it to his children as a gift. *Id.* When asked why he did not disclose his ownership of property in Bangladesh prior to May 2013, Plaintiff stated:

> I said when I got Social Security no worker questioned me if you have any property in Bangladesh or not. Why should I say it willingly? Nobody would tell. Nobody would tell this. When, in 2013, in May - - when I mad application for my wife - - talk - - then they questioned me if you have any property in Bangladesh. I told the truth, yes, I have. And yeah, I explained everything. Before that, nobody asked me. I told the truth. I don't have any deed. I transferred in 2004, when I was in the hospital, in our country's law, verbally donated. I thought if I die, so that my - - all sons get equal shares. To balance, the - - to keep the balance among all sons, I did it verbally. This is active in Bangladesh. Now then they said it verbally, you need to make it a document, and then I made it a document.

AR 218.

During the hearing, Plaintiff's attorney stated Plaintiff had filed an appeal of the Social Security notice dated May 14, 2013, alleging he was over the resource limit. AR 215. Plaintiff confirmed that he did. *Id.* Plaintiff testified that a worker named Mrs. Lee (phonetic) said that if he brought a document from Bangladesh by May 14, 2014, then the SSA could "give [him] money." AR 216.

Plaintiff's attorney also questioned him about the written deed and verbal donation. When asked what "Heba" meant in the deed, Plaintiff replied that it meant donation. AR 221-22. When asked about the verbal gift, Plaintiff replied:

> In 2004 I had a heart attack, suddenly. I got admitted to hospital. They did angiogram. Then I thought I might die, and I brought - - I - - my wife was there, daughter was there, son-in-law was there. In front of

7

> them I declared the lands that I have, distribute the property as I said.
> Okay, you get all among yourselves, like this. You just get distributed
> among yourselves. And when I die, don't do any - - quarrel. Use it,
> yeah, correctly, and live correctly. Yeah, what - - I gave you what I
> got from my grandparents, my forefathers.

AR 222.

**C.  The ALJ Decision**

On April 7, 2016, the ALJ issued an unfavorable decision, finding Plaintiff was overpaid $13,975.20 during the period December 1, 2011 to May 1, 2013.  AR 16-20.  The ALJ determined the overpayment was Plaintiff's fault because he failed to report real properties he owned in Bangladesh.  AR 18.  The ALJ noted Plaintiff's testimony "that he verbally gave the property to his children while hospitalized in 2004 in a supposed deathbed bequest," but found "there is no proof of any legal transfer or even testimonial evidence to support a verbal transfer occurring before 2014."  AR 19.  The ALJ also noted Plaintiff "does not dispute that he was over the SSI resource limit through the month that he disposed of the property in a gift to his adult children on February 25, 2014 and March 11, 2014."  AR 18 (citing AR 184).

As to the issue of waiver, the ALJ found Plaintiff was not entitled to waiver of the overpayment under 20 C.F.R. § 416.550 because "[a]djustment or recovery of the overpayment shall be waived only *if the claimant is without fault*," and Plaintiff "was clearly at fault for the overpayment" because he failed to furnish information which he "knew, or should have known, was material."  AR 19 (citing 20 C.F.R. § 416.550(a)) (emphasis in original).  Even if she were to find Plaintiff was without fault, the ALJ found no support for waiver because Plaintiff

> is an engineer and has worked in the United States.  While he is hard
> of hearing, he speaks English and the record very clearly shows he is
> able to communicate effectively in written English (Exhibits 3, 6, 9,
> 13, page 2, and 20-22).  The assertion of the claimant's representative
> that the claimant had language barriers that may have contributed to
> his misunderstanding of the reporting requirements (Exhibit 34, page
> 4), is contradicted by the claimant's written statements alone.

*Id.*

**D.  Plaintiff's Appeal**

On April 15, 2016, Plaintiff filed a request for review of the hearing decision.  AR 206.  The ALJ's decision became final when SSA denied his request on November 13, 2017.  AR 4.

1   Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review
2   pursuant to 42 U.S.C. § 405(g). On July 30, 2018, Plaintiff filed the present Motion for Summary
3   Judgment. On August 27, 2018, Defendant filed a Cross-Motion for Summary Judgment.

### III. STANDARD OF REVIEW

A federal district court may not disturb the Commissioner's denial of a waiver of overpayment request if the decision is supported by substantial evidence and without legal error. 42 U.S.C. § 405(g); *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). Considering the administrative record as a whole, "'[s]ubstantial evidence' means more than a scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006); *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[W]here the evidence is susceptible to more than one rational interpretation" and the ALJ has provided a rational interpretation, the district court must uphold the decision of the ALJ. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

### IV. DISCUSSION

Plaintiff argues the ALJ's finding that he was at fault in causing the overpayment is not supported by substantial evidence. Pl.'s Mot. at 3. He maintains he did not understand that the property he owned in Bangladesh was property that was counted when determining the SSI resource limit and, even if it was, he believed he had legally given away his Bangladesh property when he verbally gifted it to his children while ill in the hospital in 2004. *Id.* at 3-4. Plaintiff also argues his "struggle with comprehension of spoken English, compounded by a hearing problem was a linguistic limitation that may have contributed to his mistaken belief that his property in Bangladesh would not count towards the SSI resource limit." *Id.* at 6. Conversely, Defendant argues substantial evidence supports the ALJ's finding because Plaintiff failed to meet his burden to establish he was without fault. Def.'s Mot. at 4.

**A.   Legal Standard**

Under Section 404(a) of the Social Security Act, the Commissioner may recover overpaid disability insurance benefits. 42 U.S.C. § 404(a)(1)(A). However, a claimant may obtain a waiver of the overpayment amount if the Commissioner finds: (1) the claimant was without fault, and (2)

9

repayment would either defeat the purposes of the Social Security Act or would be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a); *Quinlivan v. Sullivan*, 916 F.2d 524, 526 (9th Cir. 1990). An overpaid individual may be found at fault if the overpayment resulted from: "(1) an incorrect statement made by the individual that he knew or should have known to be incorrect; (2) failure to furnish information that he knew or should have known to be material; or (3) acceptance of a payment that he either knew or could have been expected to know was incorrect." *McCarthy v. Apfel*, 221 F.3d 1119, 1126 (9th Cir. 2000) (citing 20 C.F.R. § 404.507). "The overpaid individual bears the burden of proving that he was without fault." *Id.* (citing *Anderson v. Sullivan*, 914 F.2d 1121, 1122 (9th Cir. 1990)).

The fault inquiry is "highly subjective, highly individualized, and highly dependent on the interaction between the intentions and state of mind of the [plaintiff] and the peculiar circumstances of his situation." *Elliott v. Weinberger*, 564 F.2d 1219, 1233 (9th Cir. 1977) *aff'd in part, rev'd in part on other grounds sub nom. Califano v. Yamasaki*, 442 U.S. 682 (1979). In making this determination, the SSA must consider "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations . . . the individual has." 20 C.F.R. § 404.507. In other words, the "fault determination requires a reasonable person to be viewed in the claimant's own circumstances and with whatever mental and physical limitations the claimant might have." *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir. 1984).

**B.     Analysis**

In reviewing the ALJ's finding of fault, the Court finds the ALJ's decision is supported by substantial evidence. Considering Plaintiff's testimony and the evidence in the record, the ALJ determined Plaintiff was at fault because he failed to report real properties he owned in Bangladesh, and that he knew or should have known this information was material. AR 18-19. First, the ALJ found Plaintiff was at fault for failing to report this property because, although he subsequently reported the property in June 2013, there was no indication he reported it at the time of his initial SSI application. AR 18. The ALJ determined Plaintiff "knew, or should have known, that such property, valued at over $320,000, was material to his obtaining SSI payments."

1   AR 19. The ALJ also noted Plaintiff's own statements questioning "why he should report
2   property he owns in his own country." AR 18-19. Plaintiff stated he "knew that the property of
3   my country will not be counted as a resources [sic] of USA" and since "no worker of SSA office
4   asked me about the property of my native country, then why should I willingly say from myself?"
5   AR 54; *see also* AR 68 ("I was not asked any question about property of my native country so I
6   did not say from my own self."); AR 140 ("I do not consider the past payment is an overpayment
7   because it was not my fault, in my past appointments no worker asked me about my property of
8   my native country, then why should I say from my own self without asking any question, nobody
9   will say from his own self."); AR 218 ("I said when I got Social Security no worker questioned me
10  if you have any property in Bangladesh or not. Why should I say it willingly? Nobody would tell.
11  Nobody would tell this."). Although Plaintiff implies it would be unreasonable for him to know
12  he needed to disclose his ownership of foreign property, he presents no authority establishing that
13  such property is not relevant to his application for SSI. *Cf.* 20 C.F.R § 404.511(a) (an individual
14  will be at "fault" in accepting overpayment if the Agency "has evidence in its possession which
15  shows either a lack of good faith or failure to exercise a high degree of care in determining
16  whether circumstances which may cause deductions from his benefits should be brought to the
17  attention" of the Agency.).

18   Second, the ALJ also noted that although Plaintiff's representative valued the property at
19  over $320,000, AR 18 (citing AR 185), Plaintiff himself undervalued the property in his reports to
20  the SSA. In June 2013, Plaintiff reported the home and land were worth $0.00 and had a tax value
21  of $0.00. AR 27. Plaintiff's failure to disclose the existence of property, then reporting its value
22  as nothing, and then stating it was worth over $320,000 USD shows a pattern of limited disclosure
23  which supports the ALJ's finding that Plaintiff was at fault in causing the overpayment.

24   Third, the ALJ noted that although Plaintiff testified he verbally gave the property to his
25  children while hospitalized in 2004, there was no proof of any legal transfer or testimonial
26  evidence to support a verbal transfer occurring before 2014. AR 18-19. Plaintiff argues the ALJ
27  committed error in this finding because he claimed he made the verbal transfer at least twice in
28  2013. Pl.'s Mot. at 7. Plaintiff is correct that the ALJ erred in finding no testimonial evidence

existed prior to 2014.  However, although a federal district court reviews a denial of a waiver request for legal error, the court has "long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  Courts deem "legal errors harmless where it was clear they did not alter the ALJ's decision." *Id.*  In doing so, the court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id.*  Here, the record establishes Plaintiff did not bring up the 2004 oral conveyance until after the SSA had determined he had been overpaid.  Further, although Plaintiff claims the oral conveyance in 2004 was effective under Bangladeshi law, the language in the deed seems to contradict that statement in that it provides: "today I have completed my verbal decision by registered deed at present of witness and has agreed to handover the assets to your hand at present of the witness and you will use the assets as per your wishes and I has handover the documents of the assets, I processed one registered gift deed as per Islamic Shariah law. . ."  AR 167.  The deed purports to "complete" Plaintiff's verbal decision and states that a registered deed is required by Islamic Shariah law.  Plaintiff argues "it is not clear that the Plaintiff knew that the written deed was necessary to complete the oral deed until he actually executed the written deed in 2014, and so this fact does not necessarily undermine his statement that he believed he had orally conveyed the property to his children in 2004."  Pl.'s Reply at 5.  Granted, Plaintiff's interpretation may be conceivable, but an ALJ's decision "should be upheld" where the evidence before her was "'susceptible to more than one rational interpretation.'" *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Andrews*, 53 F.3d at 1039-40.  Thus, the ALJ committed, at most, harmless error, and there is no basis to overturn the ALJ's decision on this ground.

Finally, the ALJ properly considered the pertinent circumstances under 20 C.F.R. § 404.507.  Plaintiff argues his poor facility with English and his hearing problems prevented him from understanding his need to disclose the fact that he owned any foreign property.  Pl.'s Mot. at 8.  The ALJ noted Plaintiff is hard of hearing, but found he speaks English "and the record very clearly shows he is able to communicate effectively in written English."  AR 19.  In support, the ALJ cited to Plaintiff's written statements throughout the record.  *Id.* (citing AR 54, 67-74, 79, 84-

86, 122-29). This is substantial evidence supporting the ALJ's finding that Plaintiff's assertion that language barriers "may have contributed to his misunderstanding of the reporting requirements . . . is contradicted by the claimant's written statements alone." *Id.* 19. The ALJ also considered that Plaintiff "is an engineer and has worked in the United States." *Id.* A claimant's level of education and work experience are proper considerations in determining whether they are at fault. *See Bynum v. Colvin*, 2016 WL 4045752, at *3 (N.D. Cal. July 28, 2016) (finding ALJ's decision that plaintiff was not without fault to be supported by substantial evidence, in part, based on the plaintiff's high level of education and his work experience).

Accordingly, because substantial evidence supports the ALJ's determination that Plaintiff accepted payments that he either knew, or at a minimum, could have been expected to know, were incorrect, the ALJ reasonably found Plaintiff was not without fault. And, given this finding, the ALJ did not need to determine the second part of the inquiry, whether repayment would either defeat the purposes of the Social Security Act or would be against equity and good conscience. *See Anderson*, 914 F.2d at 1124 ("The ALJ did not address whether appellant meets the financial requirement for waiver . . . because of the finding that appellant was at fault regarding the overpayment.").

### C. Reinstatement of Benefits

As part of his motion, Plaintiff requests the Court "direct the San Francisco Downtown Social Security Administration Field Office to make an initial determination as to how the gifting of the Bangladesh properties by deed in 2014 affected his SSI eligibility." Pl.'s Mot. at 9. Plaintiff contends he "had previously been told his payments could be restarted" if he submitted proof of the Bangladesh properties by deed to his children. *Id.* at 8. Plaintiff submitted written documentation of the deeds to the ALJ and requested the ALJ address his entitlement to reinstatement of SSI benefits. *Id.* However, the ALJ found "[t]he Administration has not yet made initial or reconsideration determinations on the claimant's disposal of his real property," and the issue was therefore "not properly before [her]." AR 19.

Claims arising out of the Social Security Act can only be brought in federal court in accordance with the judicial prerequisites of 42 U.S.C. § 405(g). *See* 42 U.S.C. § 405(h) (stating

13

1  the Act contains an exclusive remedy provision).  The remedy provision in Section 405(g)

2  provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision. . ..

*Id.* § 405(g).  Judicial review is permitted only once a "final decision" by the Commissioner has been made. *Id.*

Although the Act does not define the term "final decision," the SSA has given meaning to the term through regulations. *Sims v. Apfel*, 530 U.S. 103, 106 (2000) (citing 42 U.S.C. § 405(a); *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)).  According to the SSA's regulations, a final decision may only be reached upon completion of the administrative review process.  *See* 20 C.F.R. § 404.900(a)(5).  According to the SSA's regulations, a claimant may seek judicial review only after requesting reconsideration of an initial determination and completing each step of the administrative review process.  20 C.F.R. § 404.900(a)(1)-(5) (the four steps consist of an initial determination, reconsideration, a hearing before an ALJ, and review by the Appeals Council; after all steps are completed, the agency has rendered a "final decision").

Plaintiff recognizes that the Court is limited to review of final decisions made by the SSA, and he appears to concede there has been no final decision regarding his transfer of his property. Pl.'s Mot. at 9 ("Since the United States District Court is limited to review of final decisions made by the Social Security Administration, the Plaintiff does not request these issues be addressed by the Unites States District Court.")  However, he requests the Court direct the SSA to make an initial determination. *Id.*  Because no final decision regarding the property has been made, this Court is without jurisdiction over this claim and must therefore deny Plaintiff's requested relief

## V.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion, **GRANTS** the Commissioner's cross-motion, and **AFFIRMS** the ALJ's decision that Plaintiff is not entitled to a

14

waiver of overpayment recovery.[7] The Court shall issue a separate judgment, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 18, 2018

THOMAS S. HIXSON
United States Magistrate Judge

---

[7] As the Court did not consider any documents contained in Defendant's Request for Judicial Notice (ECF No. 31), the request is denied as moot.

15